CHARLES F. JONES, Appellant, v. GEORGE DeMoss and IDA DeMoss.

**Landlord and tenant:** ACTION FOR RENT: PREMATURE COMMENCEMENT. A lease providing that failure to pay rent as agreed should mature the rent notes and authorize the lessor to treat the lease as forfeited and to take possession of the premises or bring action therefor, is held to authorize the landlord, upon failure to pay the first rent note or any part thereof at maturity, to elect to declare the subsequent notes due and to take possession of the premises; but until he exercised this election the subsequent notes did not mature prior to their dates of maturity, and an action on the lease instituted after payment in full of the note first maturing, but prior to maturity of subsequent notes and before the landlord had attempted to declare the notes due and payable under the terms of the lease, was prematurely brought.

**Same:** RESERVATION OF RIGHTS: CONSTRUCTION OF LEASE. Under a lease reserving to the landlord the right to fall plow and seed, in proper season, and to go upon the premises at all times for the purpose of making repairs and improvements, or for any other purpose not interfering with the rights or privileges of the lessee, it is held that the clause "which shall not interfere with the rights or privileges of the lessee," does not relate to the entire reservation of rights, but should be confined to his use of the premises for purposes other than those expressly specified; and an instruction holding the lessor accountable in damages for making improvements, regardless of his right to do so under the lease, was erroneous.

**Same:** IMPROVEMENTS BY LANDLORD: DAMAGES: INSTRUCTION. Where, as in this action by the landlord, the tenant claimed damages because of the landlord's entry upon the premises and the making of repairs and improvements, the evidence tended to show that the landlord's acts were in the main beneficial to the tenant, and all of them were without objection and many with the implied consent of the tenant, it was error for the court to magnify the extent of the tenant's injury by characterizing the damage inflicted by plaintiff's acts as great.

**Same.** Where a landlord pleads consent by the tenant to the making of repairs as an affirmative defense to the tenant's claim for

damages on that account, and the evidence tends to support this issue, the court should submit the defense by adequate instructions, which in this case are held insufficient.

**Same:** MEASURE OF DAMAGES. Where a tenant, in defense of an action for rent and possession of premises, claims damages because of certain work and improvements made on the premises by the landlord, as the manner of removal of shade trees, etc.; the measure of his damage in these respects is not the difference in the rental value of the premises before and after the doing of such acts by the landlord, but his liability is for the specific injury thus resulting.

*Appeal from Greene District Court.*—HON. Z. A. CHURCH, Judge.

FRIDAY, APRIL 7, 1911.

ACTION aided by an attachment to recover an amount due from defendants as rent, evidenced by two promissory notes, one of which had not by its face matured at the time action was brought. The defendants admitted the execution of the notes, but denied that any amount was due thereon when action was brought, alleging the first notes had been paid in labor performed for and grain and hay sold to the plaintiff. There was a counterclaim for damages for entering upon the premises to construct tile drains, and for damages resulting from the tearing down of a henhouse, and for other wrongs charged by way of interference with defendants' rights and possession. Plaintiff in his reply alleged consent of defendants to the entry upon the premises for the purpose of tile draining and making repairs, and a settlement of all the damages alleged in defendants' counterclaim. There was a trial to a jury and a verdict for defendant in the sum of $265. From judgment on this verdict plaintiff appeals. *Reversed.*

*Wilson & Albert* and *H. G. Giddings,* for appellant.

*Howard & Howard,* for appellees.

McCLAIN, J.—In June, 1909, the farm on which
defendants were residing as tenants of one Maggie Ham-
ilton for a term of one year ending the 1st of March fol-
lowing, "with privilege of three years if satisfactory to
both parties," was sold to this plaintiff, and two rent notes
for $210 each, one maturing September 1, 1909, the other
January 1, 1910, were assigned to him as a part of the
same transaction. Defendants performed work for the
plaintiff, and furnished him some oats and hay, and gave
him the use of a barn for horses; and the amount of the
account for these items furnished before the bringing of
this action in November, 1909, was more than the
amount of the first rent note. One of the contentions
for defendants was that when action was brought there
was nothing due, and the suit, was premature. The de-
fendants' counterclaim, setting up a cause of action for
damages on account of the wrongful suing out of the at-
tachment, was, however, dismissed before the trial, al-
though the question of whether there had been default in
the payment of the first note so as to render the second
note due and payable under the terms of the lease prior
to the bringing of the action was still a matter of con-
troversy under the pleadings. The lease contained a pro-
vision "reserving for the first party (lessor), his (her)
grantees, lessees, or agents the right to fall plow any stub-
ble during the proper season and to seed the same to
grain or grass;" also granting same parties "privilege to go
upon the premises at all times and make fences, building,
or other improvements, to show premises ·to prospective
buyers, or for any other purpose which shall not interfere
with the rights or privileges of the second party." Prior
to the sale of the premises to plaintiff, Maggie Hamilton
had commenced the construction of tile drains through
certain meadow and hay land, and this construction was

continued by plaintiff from June until September with the result, as defendants alleged, that a part of the crop of hay was destroyed, and the use of the meadow for pasture was prevented to defendants' damage, plaintiff neglecting to fence the ditches made in laying the tile drains, as he had promised, so that defendants were unable to use the meadow for the pasturage of their horses. There was evidence tending to show that the construction of the tile drains was with defendants' consent, and that various acts on the part of plaintiff in tearing down a small building and replacing it with another, removing shade trees with dynamite, and erecting a small building for his own occupancy near the dwelling-house occupied by defendants, were by defendants' permission, or at least without objection on their part.

I. If at the time action was brought any portion of the first rent note remained unpaid, then there was a default in payment of rent under the lease which would justify the plaintiff in treating the subsequent note as matured, and the action was not premature. If, on the other hand, plaintiff had not exercised his election to declare the second note mature for default in payment of the first note until after that note had in fact been paid by allowing defendants credit for labor performed and hay and oats furnished, then plaintiff had no cause of action when the suit was instituted, and could not recover on the second note. Appellant's contention is that if credit had not been allowed in an amount sufficient to extinguish the first note until it became due, then the second note by operation of law under the terms of the lease became due and payable, and a subsequent allowance of credit extinguishing the first note would not prevent the cause of action being mature under the second note.

*1. LANDLORD AND TENANT: action for rent: premature commencement.*

It is true that an unliquidated claim for damages or on account does not defeat a cause of action on a

liquidated claim so as to render the bringing of the action improper. *Smeaton v. Cole,* 120 Iowa, 368; *Jones v. Witousek,* 114 Iowa, 14. But that is not the question presented in this case. The court instructed the jury to the effect that if at the time the action was instituted nothing was due on the first note, and appellant had not declared or attempted to declare the second note due and payable under the provisions of the lease, then plaintiff had no cause of action. This we think clearly to be a correct statement of the law. The lease provided that failure to pay the rent as agreed upon should "mature the notes given for rent and . . . authorize the first party to consider the lease as forfeited without any demand for rent, . . . and he may take possession of the premises without notice, . . . or he may bring action as allowed by law to recover the possession." Several other acts aside from the failure to pay rent are specified as grounds which should render the notes mature and authorize the landlord to take possession. Construing the whole provision, we think the stipulation was, in effect, that the landlord had a right on failure to pay the first rent note at maturity or upon the happening of the other contingencies specified to elect to declare the second note due and to take possession if he saw fit, but that until he exercised this election the second note did not become mature prior to the date of maturity according to its face. The matter was properly presented to the jury.

II. With reference to the counterclaim for damages upon account of the construction of the tile drains, the tearing down of a building on the premises, the construction of a small house for his own occupancy in close proximity to the dwelling-house occupied by defendants, and the cutting down of shade trees and removing the same by the use of dynamite near the dwelling-house, the

2. SAME:
reservation
of rights:
construction
of lease.

court instructed the jury that while plaintiff had a right under the terms and conditions of the lease to enter upon the premises for the purpose of making fences or other improvements and erecting buildings, he could not do so "if in so doing those actions interfered with the rights and privileges of the defendant," and that if plaintiff entered the premises for the purpose of making improvements, and did interfere with the rights of defendant and cause damage to the crops or other property of the defendant, then he would be liable for the damages sustained.

The clause of the lease relied upon has already been set out. The court evidently construed the last clause "which shall not interfere with the rights or privileges of the second party" as relating to the entire reservation, that relating to the fall plowing and seeding and to the going upon the premises at all times to make fences, buildings, or other improvements, whereas we think it should be confined to the going upon the premises "for any other purpose" than the purposes not expressly specified. The rights and privileges of the defendants covered the entire right to occupy and use the premises during the term of the lease, to the exclusion of the landlord and all other persons. If the reservation was to be construed as granting no rights interfering with this exclusive right of possession and use, then it conferred nothing, for it would be impossible for the landlord to fall plow and seed or to make fences or to erect buildings or to construct tile drains without interfering with the tenants' rights or privileges, and being liable in damages no matter what care he might use in doing the work. Under the instructions of the court, the plaintiff was liable to defendants for whatever damages resulted from doing the acts which he did regardless of any question of negligence in doing them. This construction of the lease was in our opinion erroneous, and rendered

improper and prejudicial to the plaintiff. all the instructions given with reference to damages.

III. The whole instruction relating to damages is also objectionable on the ground that it stated declaratively as though conceded by plaintiff or established without controversy that plaintiff dug the drains and ditches in such manner as caused "great damage" to defendants; that plaintiff drove across the premises in such manner "as to cause great damage to the defendants;" that plaintiff entered upon the premises and scattered dirt and broken tile thereon "to the great damage of defendants under their lease;" that he entered upon the premises and "built a house in such close proximity to their (defendants') dwelling-house and between them and the highway as to cause great damage to defendants under their lease;" that he cut down and removed shade trees "by the use of the explosion of dynamite near to the dwelling-house of said defendants to their great damage under their lease," etc. These expressions were used not with reference to the claims of defendants, but as indicating what were the facts to be considered by the jury in the case. It is plain that the court should not have characterized the amount of damages suffered in, these respects as "great," and that in other respects not here enumerated he should not have stated that some of the acts complained of were to defendants' damage, when the evidence was in conflict as to whether any damages for which compensation could be given resulted. The whole instruction was calculated to magnify the extent of injury inflicted upon defendants in the face of evidence tending to show that plaintiff's acts were in the main beneficial to the defendants, and all of them without objection on the defendants' part and many of them with their implied consent.

IV. As already indicated, there was evidence tending to show express or implied consent to many if not all

3. SAME: improvements by landlord: damages: instructions.

the acts of plaintiff concerning which defendants seek to recover damages. The only reference in the instructions which we can find to the subject of consent is in the one relating to damages in which the jurors were told that if they found the acts complained of were done, and that they did under the evidence "interfere with the rights and privileges of the defendants under their lease," then the jury should award damages to defendants, "keeping in mind, however, that in certain of the matters claimed as damages by the defendants it is claimed by the plaintiff that he had permission so to do from the defendants." This, we think, was a totally inadequate presentation of the claim made by plaintiff in his pleadings and finding support in the evidence that defendants consented to many of the acts for which recovery was sought. Such consent would not merely affect the amount of damages to be allowed for the acts thus consented to, but would entirely defeat any recovery whatever for damages on account of such acts. Consent was an affirmative defense, and as such was not submitted to the jury.

*4. SAME.*

V. As to the matter of damages the jurors were instructed that if the doing of the things enumerated by the court as having been done by plaintiff to defendants' damage or great damage did in the judgment of the jurors under the evidence interfere with the rights and privileges of the defendants under their lease, then they should grant to defendants on their counterclaim such reasonable damages as the evidence showed they had sustained, and "reasonable damages on this claim of defendants will be the difference in the reasonable rental value of the three hundred and twenty acres in question before action of the plaintiff in entering upon the premises and doing the things, if he did do them, complained of by defendants and the reasonable value of the three hundred and twenty acres after

*5. SAME: measure of damages.*

the actions of the plaintiff as claimed by defendants in these matters." It is difficult to see how some of the matters referred to in the instruction could have affected the rental value of the farm. Certainly, the fact that dynamite was used in taking out some shade trees to the terror of defendants could not have rendered the farm of any less rental value than though the shade trees had been removed in the ordinary manner, and the fact that certain chickens were turned out of their accustomed home and perished as the result of plaintiff's action in doing so would hardly be a basis for finding that the rental value of the farm had been decreased. But on the whole, the measure of damages was put on the wrong basis. Unless he did the authorized acts in a careless or negligent manner, the plaintiff would be liable for the specific injuries resulting to defendant, and not, as we think, for the decreased rental value. However this may be as an abstract proposition—and perhaps cases might arise in which decrease in rental value would be a proper measure of damage even for negligence which resulted in permanent injury—the instruction was plainly wrong in allowing the jury to consider as affecting decrease in rental value many elements of alleged wrong which could have had no relation whatever to such decrease. The instruction in this respect was misleading, and calculated to prejudice plaintiff's rights, and should not have been given.

VI. Many objections are made for appellant on rulings as to the admission of testimony. Some of the testimony admitted over objection for plaintiff related to issues which the court subsequently withdrew from the jury with the direction that the testimony relating thereto should not be considered. On a retrial of the case, if it is tried on the issues which were finally submitted, much of the evidence offered and to which objection on plaintiff's part was overruled will be plainly immaterial. We find no occasion now for reviewing these various rulings. On

a retrial of the case in accordance with the rules of law herein announced the same difficulties will not arise.

For the errors already pointed out, the judgment is *reversed*.